**Jeffrey A. Rothman**
Attorney at Law
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

June 5, 2018

By ECF
The Honorable P. Kevin Castel
United States District Court Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: <u>Phoenix Feeley v. City of New York, et al.</u>; 15 Civ. 8349 (PKC)

Dear Judge Castel:

  I am counsel for Plaintiff, and write to provide the Court with Plaintiff's comments and objections concerning the Court's Draft Jury Instructions Version 1, and the Court's Draft Version 1 of the Verdict Form, that were handed out to the parties in Court today. I also write to supplement Plaintiff's prior request for sanctions for the withholding of materials in Defendants' file that should have been produced to me long ago.

**Plaintiff's Excessive Force Claim Should Be Analyzed Under the Fourth Amendment, and not under the Fourteenth Amendments**

  At the conference on May 24, 2014 Your Honor cited to <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 476 (2d Cir. 1995), and informed the parties that it appeared to Your Honor that it was controlling precedent requiring the Court to analyze Plaintiff's excessive force claim under the 14th Amendment rather than the 4th Amendment. <u>Rodriguez</u> is not controlling precedent in that regard, however, as the Circuit's comments concerning that issue were dicta. The Circuit (as with the Magistrate Judge's report and the District Court's decision in that case) did not consider whether being thrown into a door might be a seizure: it simply assumed that it was not a seizure, and that therefore it must be analyzed under the 14th Amendment (and that qualified immunity applied because at that time - in 1995 - the law was not clearly established that a substantive due process excessive force claim existed under the 14th Amendment). There is no indication in the Circuit's decision – or in the District Court's decision in <u>Rodriguez</u>, at 1994 U.S. Dist. LEXIS 8032, at *18 n. 5 & n. 6 (S.D.N.Y. June 15, 1994) – that either the Circuit or the District Court considered the question of whether being thrown into a door might constitute a seizure. Indeed, the District Court in <u>Rodriguez</u> cited to <u>Posr v. Doherty</u>, 944 F.2d 91, 97 (2d Cir. 1991) for the <u>incorrect</u> principle that:

>an individual is 'seized' for purposes of the Fourth Amendment "'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave'") *(quoting United States v. Mendenhall,* 446 U.S. 544, 551-57, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)).

Rodriguez, 1994 U.S. Dist. LEXIS 8032, at *20 n.6 (S.D.N.Y. June 15, 1994) (emphasis added). Nine years after U.S. v. Mendenhall, however, the understanding of what can constitute a seizure expanded considerably with the Supreme Court's decision in Brower v. County of Inyo, 489 U.S. 593 (1989), which held that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*." Brower at 596-597 (1989) (emphasis in original). It is under this aspect of seizure jurisprudence that Plaintiff asserts she was seized by Officer Jurena when he barreled into her, and this aspect of seizure jurisprudence was not considered at all by the Circuit when it stated, in dicta, that the plaintiff in that case was not seized when she was thrown into a door.

In Plaintiff's 10/4/17 Memorandum of Law Concerning Whether Plaintiff's Excessive Force Claim Should be Analyzed Under the Fourth Amendment, or Under the Fourteenth Amendment (docket # 77), Plaintiff cited to and discussed a number of decisions from the 7th and 11th Circuits - West v Davis, 767 F.3d 1063 (11th Cir. 2014), Acevedo v Canterbury, 457 F.3d 721 (7th Cir. 2006), Carlson v. Bukovic, 621 F.3d 610 (7th Cir. 2010), Lamb v. City of Decatur, 947 F.Supp 1261 (C.D. Ill. 1996) - that applied the Brower definition of a seizure, and held that a seizure occurred in circumstances akin to those at bar.

On the witness stand today, Plaintiff has testified that just before he plowed himself into her, Officer Jurena told her to move. She asked why she had to move, and he then plowed into her and physically moved her some feet with the force of the blow. A Second Circuit case from just a few years ago shows that the Fourth Amendment is the proper analytical framework for Plaintiff's excessive force claim in this case. In Salmon v. Blesser, 802 F.3d 249 (2d Cir. 2015), the defendant police officer (Officer Blesser) was alleged to have:

>... approached and ordered persons to leave the area. Salmon explained that he was waiting for his attorney and offered to summon counsel to confirm that fact. According to Salmon, Blesser "became enraged . . . , and without warning, grabbed [Salmon] by the collar and violently twisted his arm up behind his back and began shoving [him] toward the door." Compl. ¶ 23. When Salmon complained that Blesser was hurting him, Blesser twisted Salmon's arm further. Blesser then "physically threw [Salmon] out the door and threatened [him] with arrest" if he reentered the building. Id. ¶ 28. Salmon asserts that these actions caused him permanent physical injury.

Salmon at 251. The Second Circuit - in a decision that squarely addressed the single issue of whether Salmon had alleged facts sufficient to plead a plausible seizure of his person – held that he did, and held that that Salmon's excessive force claim should be analyzed under the Fourth Amendment:

> Here, however, Blesser's method for removing Salmon was not simply to order or escort him from the courthouse, or to use guiding force to direct him as needed. It was physically to grab him without encountering reprisal or resistance, and to use painful force to control Salmon's movements.... Whatever other actions might effect a Fourth Amendment seizure of a person ordered to depart a public area, the intentional use of physical force to restrain the person and control the movements of a compliant person certainly does. See *California v. Hodari D*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) (stating that "word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement"); see also Webster's Third New International Dictionary 2057 (1986) (defining "seize" as, inter alia, "to possess or take by force" and "to take hold of"); 2 Samuel Johnson, A Dictionary of the English Language (8th ed. 1799) (defining "to seize" as, inter alia, "[t]o take hold of; to grip[]; to grasp" and "to take possession of by force"). Thus, at the point Blesser allegedly used such force, it no longer mattered whether his ultimate purpose was to secure Salmon's departure from the courthouse or to prevent it. For such time as Blesser held Salmon by the collar and twisted his arm behind his back, Blesser was intentionally restraining and controlling Salmon's movements, thereby transforming their encounter, even if only briefly, into a detention, which qualifies as a seizure of Salmon's person. See *Brendlin v. California*, 551 U.S. at 255 (recognizing that seizure can occur even where "'resulting detention [is] quite brief'" (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979))); *United States v. Sugrim*, 732 F.2d 25, 28 (2d Cir. 1984) ("A detention no matter how momentary is a seizure under the Fourth Amendment."); see generally Henderson, "Move On" Orders as Fourth Amendment Seizures, 2008 B.Y.U. L. Rev. at 16 (suggesting that use of force could transform "move on" order into seizure if interaction thereby became, "even momentarily, a detention"). Whether such a detention or seizure is reasonable is of course another question.

Salmon at 254-255 (internal citations omitted where ellipses placed). The Second Circuit in Salmon did then go on, at 255, to opine that an order to move by a police officer accompanied by a shove might not work a seizure, but the facts at bar do not involve a mere shove. The facts at bar involve a male police officer much larger than the female plaintiff, who plowed his body into her and knocked her back some feet, thereby making her move (as he had just ordered her to do).

    There are a number of other cases from the Supreme Court and Second Circuit holding that intentionally controlling a person's movement transforms an encounter into a seizure. *See, e.g.,* Brendlin v. California, 551 U.S. 249, 255 (2007) (recognizing that a seizure can occur even where "'resulting detention [is] quite brief'" (internal quotation omitted); U.S. v. Sugrim, 732 F.2d 25, 28 (2d Cir. 1984) ("A detention no matter how momentary is a seizure under the Fourth Amendment"). *See also* U.S. v. Mendenhall, 446 U.S. 544, 554 (1980) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer,

some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"); *California v. Hodari D.,* 499 U.S. 621, 626 (1991) (finding that there is a seizure under the Fourth Amendment where there is "*either* physical force … *or,* where that is absent, *submission* to the assertion of authority" (emphasis in original).[1]

**Further Comments and Objections Concerning the Court's Draft Jury Instructions Version 1, and the Court's Draft Version 1 of the Verdict Form**

As discussed, *supra*, Plaintiff respectfully objects to the jury being charged concerning her excessive force claim under the Fourteenth Amendment substantive due process standard, rather than under the Fourth Amendment "objective reasonableness" standard.

Plaintiff additionally respectfully notes her objection to the removal of her separate claim for First Amendment Interference from Plaintiff's proposed instructions (docket # 75 at page 34).

Plaintiff further respectfully requests that the Court make the following edits to the Court's Draft Jury Instructions Version 1, for the sake of clarity and correctness:

> (1) In the "What Is and Is Not Evidence" section on page 8, that the first two paragraphs be changed to (proposed additional text is underlined):
>
>> The evidence in this case is the sworn testimony of the witnesses - including any sworn testimony read to you from the depositions of the witnesses - the exhibits received into evidence, and the stipulations made by the parties.
>> By contrast, the questions of a lawyer are not evidence. It is the witnesses' answers that are evidence, not the questions. Of course, however, you must consider the witnesses' answers together with the questions that were asked of them, such as when an answer adopts what is asked in a question.
>
> (2) In the section "Intentional or Reckless Action" on pages 20-21, that the first paragraph be changed to (proposed additional text is underlined):
>
>> To prove the second essential element of her claims, Ms. Feeley must not only show that Officer Jurena's acts deprived her of a right but also that he committed those acts intentionally or recklessly. Ms. Feeley must only show that Officer Jurena had the intent to do the act in question, or that he did the act recklessly, not that he had the intent to cause, or reckless caused, any injury to her.

---

[1] See also, Pluma v. City of N.Y., 2015 U.S. Dist. LEXIS 48134, at *8-18 (S.D.N.Y. Mar. 31, 2015) (Preska, J.) (holding that allegations of pepper spraying by police of non-arrestee plaintiff properly alleged a seizure, and analyzing the claim under the Fourth Amendment).

(3) In the "Proximate Cause" section on page 21, that the first paragraph be changed to (proposed additional text is underlined):

> The third element plaintiff must prove for each of her claims is that the defendant's acts were a proximate cause of the injuries she sustained. An act is a proximate cause of an injury if it was a substantial factor in bringing about that injury and if the injury was a reasonably foreseeable consequence of the defendant's act. <u>It is not necessary for a defendant to have foreseen that any precise or particular injury would result from his conduct. All that is necessary is that the type(s) of injuries caused by a defendant could reasonably be foreseen to result from his conduct.</u> In other words, if Officer Jurena's acts or omissions had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

(4) It is respectfully submitted that the second paragraph of the Damages section on pages 22-23 should be deleted in its entirety. It is respectfully submitted that the Court also should not mention income taxes at all, as the income tax laws are in flux (and often quite byzantine) and it cannot be said definitively that the IRS does not now, or would not, require Ms. Feeley to pay taxes on any compensatory damages award she receives on either or both of her excessive force claim or her First Amendment retaliation claim, or on any punitive damages she receives.[2] It is also respectfully submitted that the Court also should not mention anything about attorney's fees. While Plaintiff's counsel will indeed seek attorney's fees pursuant to 42 U.S.C. § 1988 in the event Plaintiff emerges as a prevailing party, it is inaccurate to suggest to the jury that Plaintiff's counsel's attorney's fees may not result in Plaintiff's net recovery being less than the amount awarded by the jury. The better course would be to simply make no mention at all of either income taxes or attorney's fees.

In the fourth paragraph of this section (on page 23) Plaintiff respectfully objects to the example given being the hypothetical circumstance of a "one-dollar injury." It is respectfully requested that the Court alter this paragraph so that it read as follows:

> First, you should not award compensatory damages more than once for the same injury. That is, if the plaintiff were to prevail on two claims and establish an injury that you determine is worth a certain amount, you could not award her that amount of compensatory damages on each claim- she is entitled only to be made whole again, not to recover more than she

---

[2] It is also respectfully submitted that there should be no mention of lost future earnings in any event, as that is not being claimed in this case.

lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of the injuries.

(5)     Plaintiff respectfully objects to the inclusion of a nominal damages instruction (on page 25) - or any sections on the verdict form concerning nominal damages - as the evidence in this case is such that it is not more than a merely hypothetical possibility that the jury would Jurena liable and yet find no actual injury. To the extent the Court does include a nominal damages instruction anyway, however, it should read as follows (proposed additional text is underlined):

> Nominal damages are the law's way of recognizing that constitutional rights must be scrupulously observed, even when constitutional violations have not been shown to have caused actual injury. If you return a verdict in the plaintiff's favor on a claim but find that she failed to meet her burden of proving by a preponderance of the credible evidence that she suffered any actual injuries for that claim, then you must return an award of damages for that claim in some nominal or token amount, not to exceed the sum of one dollar. <u>As some examples of actual injury, if you find that Officer Jurena caused Ms. Feeley any physical injury for which she suffered any pain or limitation on her activities, or stemming from which she sought any medical treatment, you must award her compensatory, and not merely nominal, damages.</u>

(6)     On the fifth line of page 27 the word "be" should be deleted (it is a typo).

## **Defendants' Further Improper Withholding Of Materials That Should Have Been Produced Long Ago**

Plaintiff requested sanctions in advance of the 5/24/18 conference for the improper withholding of Plaintiff's acupuncture records that the Law Department had obtained from the acupuncturist in November of 2016 by way of a HIPAA release provided them by Plaintiff, that should have been forwarded to me upon receipt. The Court stated that it would evaluate the sanctions motion at the end of the case.

At sidebar today, I informed the Court of the Law Department's further malfeasance in this regard. I was told by non-party witness Ray Santiago last week that he had mailed an errata sheet to his deposition to the Assistant Corporation Counsel who had previously been defending the case. Had he not told me about it, I never would have known of its existence. I immediately emailed opposing counsel, and they provided me with the errata sheet and deposition signature page just last week that Mr. Santiago had mailed to them in December of 2016 (the envelope they provided to me is postmarked 12/5/16). I then inquired if there were further communications from non-party witnesses that had not been provided to me, and opposing counsel then last week for the first time sent me the signed deposition signature page of non-

party Nicky Shapiro (which is postmarked 12/10/16). I respectfully request that the Court consider sanctions for the withholding of these items as well at the conclusion of the case.

    I thank the Court for its consideration in this matter.

                          Respectfully submitted,

                           /S/

                           Jeffrey A. Rothman
                           Counsel for Plaintiff